Prepared and submitted by:
 Gregory Y. Porter, *pro hac vice*
 gporter@baileyglasser.com
 James L. Kauffman, *pro hac vice*
 jkauffman@baileyglasser.com
 **BAILEY & GLASSER LLP**
 910 17th Street NW, Suite 800
 Washington, DC 20006
 Telephone: 202.463.2101
 Facsimile: 202.463.2103

Attorneys for Plaintiff and the Class

James E. Magleby (7247)
 magleby@mgpclaw.com
Jennifer Fraser Parrish (11207)
 parrish@mgpclaw.com
**MAGLEBY & GREENWOOD, P.C.**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101
Telephone: 801.359.9000
Facsimile: 801.359.9011

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| KELLY JESSOP, an individual, on behalf of himself and all others similarly situated, <br><br>     Plaintiff, <br><br> v. <br><br> DALLIN LARSEN, an individual, HENRY MARSH, an individual, RANDY LARSEN, an individual, and BANKERS TRUST COMPANY, <br><br>     Defendants, <br><br> And related Third Party Complaint. | **PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT AND AMENDMENT OF CLASS DEFINITION** <br><br><br> Civil No. 2:14-cv-00916 <br><br> Honorable Bruce S. Jenkins |

Plaintiff Kelly Jessop, Individually and as Class Representative ("Plaintiff"), hereby moves the Court for the entry of an order preliminarily approving the settlement agreement between the Parties, along with the United States Department of Labor ("DOL"), approving the form and manner of class notice, and setting a date for a fairness hearing. Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

## I.  INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1000, et seq., ("ERISA") class action for a cash payment of $19,800,000, of which no portion is a tax or penalty under ERISA or the Internal Revenue Code of 1986 as amended. Should the Court grant final approval, every eligible member of the Class will receive their portion of the net Settlement Fund according to a plan of allocation, which will provide each Class Member an average allocation of $30,000.

The proposed settlement ("Settlement") satisfies all of the criteria for preliminary approval. The Parties' Settlement Agreement provides an excellent resolution for the Class. Plaintiff respectfully requests that the Court: (a) grant preliminary approval of the Settlement Agreement, attached to the Declaration of Gregory Y. Porter (the "Porter Declaration") as Exhibit 1; (b) approve the proposed Class Notice, Exhibit C to the Settlement Agreement; (c) appoint KCC LLC as the Settlement Administrator; (d) appoint KCC LLC Escrow Agent; (e) appoint Huntington National Bank as Successor Trustee; and appoint Fiduciary Counselors Inc. as Independent Fiduciary.

2

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Background

This is a certified class action brought on behalf of participants and beneficiaries of the Mona Vie, Inc. Employee Stock Ownership Plan ("Mona Vie ESOP") alleging that Defendants Bankers Trust Company (and/or Bankers Trust Company of South Dakota, collectively "BTC"), Dallin Larsen, Randy Larsen, and Henry Marsh (the "Individual Defendants") violated ERISA and breached their fiduciary duties in connection with the purchase of stock of Mona Vie, Inc. ("Mona Vie") by the Mona Vie ESOP on or about November 17, 2010 ("the 2010 Transaction") for $186 Million. (Am. Compl. ¶3.)

Plaintiff alleges that BTC violated ERISA § 404, 29 U.S.C. § 1104, § 405, 29 U.S.C. § 1105, and § 406 , 29 U.S.C. § 1106, because BTC: (1) caused or permitted the Mona Vie ESOP to engage in the transaction without undertaking an appropriate investigation of the 2010 Transaction as proposed; (2) was aware of facts or should have known facts evidencing that the 2010 Transaction was imprudent and not in the best interest of the ESOP's participants and beneficiaries; (3) caused or permitted the Mona Vie ESOP to take on excessive debt in the transaction; (4) engaged in the 2010 Transaction without regarding the conflicts of interested parties who assisted it in the 2010 Transaction; and (5) did nothing to cure the overpayment by the Mona Vie ESOP for its shares. (*Id.* ¶¶ 64-80, 91-94.)

Plaintiff alleges that the Individual Defendants violated their fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, violated ERISA § 406, 29 U.S.C. § 1106, and breached their fiduciary duties generally by participating in the 2010 Transaction and not

taking prudent steps in the selection of BTC as trustee. (*Id.* ¶¶ 81-94.) Plaintiff alleges that choosing a fiduciary for a retirement plan is itself a fiduciary act. (*Id.* ¶ 87.) Further, Plaintiff alleges that the Individual Defendants are parties-in-interest under ERISA § 404, 29 U.S.C. § 1104 who knowingly participated in the breaches of fiduciary duty committed by BTC. (*Id.* ¶¶ 81-94.) Specifically, Plaintiff alleges that the Individual Defendants knew: (1) sales of Mona Vie products were declining; (2) Mona Vie was widely being criticized in media outlets; (3) several of its top distributors had multi-million dollar judgments entered against them; (4) several of its top distributors had repeatedly made false and misleading about health benefits from Mona Vie products; (5) Mona Vie was mired in bitter lawsuits with considerable potential liability; and (6) virtually of its sales came through its top distributors, many of whom were rapidly leaving Mona Vie. (*Id.*)

BTC and the Individual Defendants deny liability to all of these allegations; deny that these allegations are true; and have vigorously defended themselves in the Lawsuit. BTC and the Individual Defendants do not admit wrongdoing of any kind regarding the Mona Vie ESOP, 2010 Transaction or the Lawsuit.

**B.      Discovery**

The Parties have diligently prosecuted this action and have engaged in robust discovery. All Parties propounded and responded to discovery. The Parties' counsel have reviewed thousands of pages of documents produced by Mona Vie, BTC, and various third parties, a total of at least 7,400 documents comprised of thousands of pages. Plaintiff's counsel retained and consulted with two primary experts, who prepared detailed reports and analyses on valuation and multi-level-marketing issues after

reviewing hundreds of pages of discovery. Defendants' counsel retained and consulted with several experts, who after reviewing hundreds of pages of discovery and documents, were prepared to render opinions on valuation and ERISA fiduciary process issues among other issues.

The Parties also took several depositions. Plaintiff's counsel took the depositions of the ESOP Trustee's counsel, the senior employee of the valuation firm hired by the ESOP trustee that conducted due diligence with BTC, the former chief financial officer for Mona Vie, and each of the Individual Defendants. All of these depositions were attended by Defendants' counsel, who also examined each witness, in some instances, at length.

### C.    Motions Practice and Class Certification

During the course of this litigation, the Parties have engaged in extensive motions practice. The motion practice included the following: Plaintiff's initially sought a Preliminary Injunction to obtain an accounting for the ESOP (DE 3), which after briefing was later withdrawn. Both BTC and the Individual Defendants filed Motions to Dismiss (DE 40, 55), which after being briefed by the Parties, were both denied. BTC filed a Third Party Complaint against Mona Vie (DE 71) and also moved for a Temporary Restraining Order (DE 81) against Mona Vie to prevent the transfer of Mona Vie assets, which was granted by the Court (DE 87). BTC filed a Motion to Strike Plaintiff's request for a jury trial (DE 88), which was also granted by the Court (DE 113).

Plaintiff filed a Motion for Class Certification (DE 120), which was granted by the Court (DE 132). The Class is currently defined as "Participants in the Mona Vie, Inc. Employee Stock Ownership Plan at any time from November 17, 2010, to the present and

the beneficiaries of such participants but excluding the Individual Defendants, any

fiduciary of the Mona Vie ESOP at the time of the 2010 transaction, and legal

representatives, heirs, successors or assigns of any such excluded party." By this motion,

Plaintiff, pursuant to the Settlement Agreement and for the reasons explained below, by

agreement moves to amend the class definition such that it is:

> All individuals who were participants in the Mona Vie, Inc. Employee Stock
> Ownership Plan at any time on or after November 17, 2010, to the date of judgment
> and their beneficiaries, but excluding the individual defendants Dallin Larsen,
> Henry Marsh, and Randy Larsen and any beneficiary claiming directly through
> them.

Also, Plaintiff moved for leave to file an Amended Complaint (DE 139), which

was also granted by the Court (DE 142). BTC filed a Motion to Dismiss the Amended

Complaint, which Motion remains pending (DE 148). Upon making initial progress with

settlement discussions, the Parties moved for various protective orders and temporary

stays to mediate the case with themselves and the DOL (DE 146, 147,155).

### D.   The Parties' and DOL's Mediation Efforts

The Parties and DOL agreed to mediate this matter with Robert A. Meyer, Esq.

JAMS. Mr. Meyer's credentials are extensive. All agreed on Mr. Meyer because he has

the reputation for mediating complex commercial matters and experience with ERISA

generally, and ESOPs specifically, to understand the complex issues of this particular

dispute. *See* Meyer Resume, Porter Declaration Exhibit 2. The Parties and DOL each

drafted and submitted comprehensive mediation statements to Mr. Meyer that were

shared with all mediation attendees and focused all sides on the key issues.

Counsel for the Parties, the DOL, the Individual Defendants, members of BTC

management and BTC consultants, and relevant insurance representatives, all attended a

two-day mediation held at the JAMS offices in San Francisco, CA on July 12 and 13, 2016. The attendees (approximately 35 total) vigorously engaged in the mediation process, during which the Plaintiff's counsel, BTC's counsel, the Individual Defendants' counsel, and the DOL each gave presentations. After much deliberation, discussion, and compromise, the Parties and DOL were able to reach a mutually agreeable settlement at the end of the second day's mediation.

### E.    DOL Participation

As further detailed in the attached Class Action Settlement Agreement, the Settlement is conditioned on the DOL not objecting to the Settlement. The Settlement is contingent on BTC and the DOL filing and agreeing to the terms of an agreed Consent Judgment between them regarding the same general issues of this class action that is approved and ordered by this Court (filed by intervention or otherwise). The Settlement is likewise contingent on certain agreed actions between the DOL and the Individual Defendants.

### III.   SUMMARY OF THE SETTLEMENT TERMS

The material terms of the Parties' Settlement Agreement are summarized below.

### A.    Benefits to the Class.

BTC has agreed to make a monetary payment of $16 million and the Individual Defendants have agreed to make a monetary payment of $3.8 million, for a combined total of $19.8 million ("Settlement Amount") into the Settlement Fund. (Settlement Agreement, ¶ 1.) Plaintiff's counsel seeks Court approval of the appointment of a Successor Trustee for the ESOP, Settlement Administrator, Escrow Agent, and Independent Fiduciary. The Independent Fiduciary's duties shall be to: (i) serve as the "plan administrator" as defined in ERISA for the MV ESOP; (ii) coordinate and transfer

the Settlement Fund net any Court approved expenses paid pursuant to Sections 9 and 10 of the Settlement Agreement ("Net Settlement Fund") from the Qualified Settlement Trust and Escrow Agent to the Successor MVI Trust; (iii) direct the Successor Trustee as to acceptance of the Net Settlement Fund into the Successor MVI Trust, the disbursement of MVI ESOP assets (including distributions to Participants), the investment of MVI ESOP assets pending distribution of assets to Participants, and other matters as appropriate; (iv) determine the amount payable from the Successor MVI Trust to each of the Plaintiff Class participants with respect to the Net Settlement Proceeds in accordance with the terms of the MVI ESOP and such records as may be available to the Independent Fiduciary; (v) coordinate and transfer the existing MV ESOP trust assets (approximately $110,000) (the "Residual Assets") from BTC to the Successor MVI Trust to be held and administered in a sub trust of the Successor MVI Trust ("Sub Trust") by the Successor Trustee; (vi) determine and pay the proper amount of the Residual Assets to each Participant in accordance with the terms of the MVI ESOP and such records as may be available to the Independent Fiduciary; (vii) exercise final discretion and authority with respect to any claims by Plaintiff Class participants and Participants with respect to distributions and payments from the MVI ESOP; and (viii) wind up the MV ESOP to the extent necessary, including preparation of any necessary MV ESOP amendments (the "Amendments"). (Settlement Agreement ¶ 8.2.) Fiduciary Counselors's firm resume and proposal are Exhibits 4A and 4B, respectively, to the Porter Declaration.

    BTC agrees to cooperate in the transition of the current MV ESOP trust assets ("Residual Assets") held by BTC pursuant to the terms of the Mona Vie, Inc. Employee Stock Ownership Plan Trust Agreement dated November 17, 2010 (the "Trust

Agreement"), to the Successor Trustee. Upon completion of the transfer of the Residual Assets to the Successor Trustee, BTC shall be deemed to have resigned as trustee of the MV ESOP and be released from any and all obligations set forth under Article VI of the Trust Agreement; and such transfer shall be deemed to be a full and complete discharge of all of BTC's duties and obligations set forth under the Trust Agreement.

As the proposed Class Notice reflects, Plaintiff Class participants will be able to submit documents to the Independent Fiduciary if a given member of the Plaintiff Class believes the payment determination made by the Independent Fiduciary is not correct. The Independent Fiduciary shall have final authority and discretion to determine the amount payable to any member of the Plaintiff Class.

The Settlement Administrator shall be responsible for disseminating Class Notice, establishing a website for case documents, establishing an interactive voice response system to respond to enquiries, and processing objections. The Settlement Administrator shall also assist the Independent Fiduciary in calculating and distributing payments from the MVI ESOP to Plaintiff Class members and in administering claims contesting the amount payable as determined by the Independent Fiduciary in its sole discretion.

The Escrow Agent shall be responsible for establishing and maintaining a qualified settlement trust to hold the Settlement Fund. The Escrow Agent shall invest the assets of the qualified settlement trust pursuant to the agreement with KCC LLC and Plaintiff's counsel. In addition to serving as Settlement Administrator during the pendency of settlement administration, KCC will assist the Independent Fiduciary in administering, calculating, and distributing the ESOP's funds to participants and beneficiaries after the money has been deposited in the ESOP. KCC's summary of

experience and proposal for Settlement Administration and Escrow Agent services is Exhibit 3 to the Porter Declaration. KCC's proposal encompasses fees and services for settlement administration, escrow, and assisting the Independent Fiduciary.

The Successor Trustee shall be responsible for holding in trust the Net Settlement Proceeds and Residual Assets transferred from, respectively, the Escrow Agent and BTC. The Successor Trustee shall serve under the direction of the Independent Fiduciary and shall have no discretion with respect to the assets it holds in trust. The Successor Trustee will be paid from the fees paid to the Settlement Administrator.

### B.   Case Contribution Award to Plaintiffs and Attorneys' Fees and Costs

Subject to Court approval, Class Counsel's fees, costs and expenses, and a Case Contribution Award payment to Plaintiff shall be paid from the Settlement Fund prior to distribution of the net Settlement Fund as described in Section 9 of the Settlement Agreement to the Plaintiff Class participants. (Settlement Agreement, ¶ 9.2.) Plaintiff Kelly Jessop shall petition the Court for an award not to exceed $10,000 in recognition of his service as class representative. (Settlement Agreement, ¶ 10.2.) Plaintiff Kelly Jessop shall also be entitled to further distribution under this settlement as a Class Member. *Id.* Class Counsel will petition the Court for an award of attorney's fees and reimbursement of litigation expenses totaling $3 million (Settlement Agreement, ¶10.1), which represents approximately 15% of the Settlement Amount.

### C.   Release of Claims

Plaintiff and the Class will provide a release to Defendants and the other Released Parties pursuant to Section 3.1 of the Settlement Agreement, and a covenant not to sue relating to any claims arising out of, or relating in any way to, the subject matter of the Action. (Settlement Agreement, ¶¶ 3.1, 3.2, 3.3). The release and covenant not to sue will

include direct and derivative claims on behalf of any class of Mona Vie employees, claims under ERISA, common law and any other statute, and shall extend to all Defendants, including each of their present, past, and future predecessors, successors, parents, subsidiaries, affiliates, divisions, assigns, officers, directors, committees, employees, fiduciaries, administrators, actuaries, agents, insurers, representatives, attorneys, retained experts and trustees. (*Id.*)

### D.     Notice and Proposed Schedule of Events

The Settlement Agreement provides that Parties shall provide the Settlement Administrator with the names and last known addresses of Settlement Class Members for the purpose of providing notice of the proposed settlement. Settlement Agreement ¶4.4.

The proposed Class Notice, <u>Exhibit C</u> to the Settlement Agreement, provides all the information necessary to inform Settlement Class Members about the nature of the Action, the terms of the Settlement, including both monetary and prospective relief, and the procedures for entering an appearance to be heard or to object to the Settlement. In addition, Class Counsel will make available to Settlement Class Members key court documents, including the Amended Complaint, the Settlement Agreement, this Motion and preliminary approval papers, Plaintiff's Motion for Award of Attorneys' Fees, and Plaintiff's Motion for Final Approval via a website established and maintained by the Settlement Administrator. The Class Notice will be mailed by U.S. mail, first class. Class Counsel anticipate that Settlement Class Members' mailing information supplied by Defendants will be largely accurate. Many Settlement Class Members were fairly recently employed by Mona Vie and are participants in the ESOP. Accordingly, it is anticipated that there are valid mailing addresses and/or email addresses for many of the Class Members. For undelivered or returned mail to Settlement Class Members, the

11

Settlement Administrator will engage in various, standardized processes to identify and locate Settlement Class Members.

Plaintiff and Defendants agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|
| Preliminary Approval Hearing | TBD |
| Parties to provide Settlement Administrator with class list and Class contact information | Thirty (30) days after Preliminary Approval Order |
| CAFA Notice | Ten (10) days after Preliminary Approval Order |
| Mail Settlement Notice | Forty-five (45) days after Preliminary Approval Order |
| Settlement Administrator's declaration on notice | Fifty (50) days after Preliminary Approval Order |
| Plaintiff's motions for final approval of the Settlement, and for an award of attorneys' fees and expenses, and for a Service Award for Named Plaintiff | Thirty (30) days before Fairness Hearing |
| Objections to the Settlement and notice of intention to appear at Fairness Hearing | Fifteen (15) days before Fairness Hearing |
| Independent Fiduciary report | Fifteen (15) days before Fairness Hearing |
| Response to Objections | Seven (7) days before Fairness Hearing |
| Fairness Hearing | TBD (not less than 100 days after Preliminary Approval Order) |

## IV.   ARGUMENT

### A.   The Court Should Amend the Class Definition

On December 1, 2015, the Court granted certification of the class action on behalf of the Mona Vie LLC Employee Stock Ownership Plan and Trust under Federal Rule of Civil Procedure 23(b)(1)(B). (DE 132). The Class is currently defined as "Participants in the Mona Vie, Inc. Employee Stock Ownership Plan at any time from November 17, 2010, to the present and the beneficiaries of such participants but excluding the

12

Individual Defendants, any fiduciary of the Mona Vie ESOP at the time of the 2010 transaction, members of their immediate families, and legal representatives, heirs, successors or assigns of any such excluded party." (the "Class") (*Id.*)

As part of the Settlement, the Parties agreed that Plaintiff would move to amend the class definition such that, of the participants in the ESOP, only the Individual Defendants and persons who might claim through them, i.e., their beneficiaries, are excluded from receiving a distribution from the Settlement Proceeds. The Parties agree to this amendment because there was consensus that members of the Individual Defendants' families who were Mona Vie employees and ESOP participants in their own right and to whom shares of Mona Vie stock were allocated because of their own work for Mona Vie should not be excluded from receiving a distribution under the Settlement Agreement where such persons were not implicated in any way in the ERISA violations alleged by Plaintiff. Further, if such persons are excluded from a distribution under the Settlement Agreement, there is substantial risk that they will bring independent litigation against the Defendants because such persons, as non-class members and non-defendants, will not be bound by a judgment entered in this action. The DOL agrees that such persons should not be excluded. Accordingly, for the reasons stated above, Plaintiff moves to amend the class definition that that it reads as follows:

> All individuals who were participants in the Mona Vie, Inc. Employee Stock Ownership Plan at any time on or after November 17, 2010, to the date of judgment and their beneficiaries, but excluding the individual defendants Dallin Larsen, Henry Marsh, and Randy Larsen and any beneficiary claiming directly through them.

**B.     The Court should grant preliminary approval of the Settlement because it is fair, reasonable and adequate.**

**1.     The standards for preliminary approval.**

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. Manual for Complex Litigation (Fourth) § 21.61 (2004). Ultimately, to approve the proposed settlement the Court must determine that it is fair, reasonable and adequate. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002).

Courts engage in a two-step process to ensure the fairness of any class action settlement. NEWBERG ON CLASS ACTIONS § 13:12 (5th ed.) The instant Motion pertains to the first step of this process, in which the Court makes a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms. *See id.* The object of preliminary approval is for the Court "to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." *Id.* § 13:13; see also *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo.2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a [final] fairness hearing"); *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07–MD–1840, 2011 WL 4431090, at *5 (D. Kan. Sept. 22, 2011) (internal quotation omitted) ("The Court will ordinarily grant preliminary approval where the

14

proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.") If the settlement is preliminarily approved, the Court enters a preliminary approval order directing the preparation of notice to class members and setting forth a schedule for objections. NEWBERG ON CLASS ACTIONS § 13:12 (5th ed.) The second step involves a final fairness hearing, at which point class objectors (if any) may provide testimony, and the Court again decides whether the settlement is fair, reasonable, and adequate. *Id.* § 13:42.

When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. *Marcus v. State of Kansas, Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182–83 (D. Kan. 2002) (citing *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993) ("[A]bsent evidence of fraud or overreaching, courts consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel.")). Counsels' judgment as to the fairness of the agreement is entitled to considerable weight. *See Law v. National Collegiate Athletic Ass'n*, 108 F.Supp.2d 1193, 1196 (D. Kan. 2000). Thus, at this stage, giving deference to the result of the Parties' arm's length negotiations and the judgment of experienced counsel following sufficient investigation and discovery, the settlement should be preliminarily approved and a final fairness hearing scheduled.

To determine whether a settlement is fair, adequate, and reasonable, a court should consider "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the

litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the Parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d at 1188.

> **2.     The proposed settlement was fairly and honestly negotiated.**
>
> > **a.     The Settlement is the result of serious, arms' length and informed negotiations.**

An indication of whether a settlement is fair and reasonable is whether it is the product of serious, arms' length negotiations coupled with extensive analysis and investigation. Extensive negotiations and investigations minimize concerns that the Settlement Agreement might be the result of collusion among opposing parties or their counsel to undermine the interests of the class for their own benefit.

The Settlement in the Lawsuit was achieved through extensive, arms' length settlement negotiations under the guidance of the mediator, Mr. Robert A. Meyer. Mr. Meyer has extensive experience mediating complex class actions, including several ERISA class actions involving fiduciary breach claims.[1] In addition to the in-person mediation sessions, Mr. Meyer communicated with the Parties by phone and email to achieve a settlement. With his assistance, the Parties ultimately reached agreement and executed a term sheet summarizing the key settlement terms on July 13, 2016.

Prior to mediating with Mr. Meyer, the Parties had already engaged in robust discovery. Having a comprehensive grasp of the facts and the legal issues, the Parties (and the DOL) prepared detailed, substantive mediation briefs. The Parties' respective

---

[1] Mr. Meyer's experience and qualifications are detailed at http://www.jamsadr.com/meyer/. (Last viewed August 4, 2016); *See also*, Meyer Resume, Porter Declaration <u>Exhibit 2</u>.

positions and arguments were also subjected to vigorous questioning and analysis by the mediator, Mr. Meyer.

The Complaint in the Lawsuit was the product of hundreds of hours of extensive and careful research and analysis. Plaintiff's Counsel worked closely with consultants and experts to investigate the claims, performing numerous analyses of complex financial data, in addition to reviewing Plan documents, financial statements, prospectuses, studies, surveys, and other information and data to prepare the Complaint.

In sum, Plaintiffs' intense and detailed pre-complaint investigation, the robust discovery process, the pre-mediation discussions, the mediation briefing, the sharing of information during mediation, and the involvement of Mr. Meyer support a finding that the settlement was reached through robust investigation and was fairly and honestly negotiated. *See* Porter Declaration ¶ 10.

### 3. Serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt

The Parties had very different views about the Defendants' liability in this matter and the likely outcome of the litigation. For instance, Plaintiff alleged that BTC breached its duties under ERISA by failing to conduct a proper investigation of Mona Vie, and valued the ESOP's purchase of shares at an inappropriately high amount. The questions of fact surrounding Plaintiff's allegations include the accuracy of Mona Vie's projections, whether the valuation methods employed by BTC and its consultants were proper, and whether there were negative facts that were ignored by BTC and the Individual Defendants. The Defendants vigorously denied all of these allegations and whole heartedly support their actions with respect to the 2010 Transaction. Defendants have

pointed to evidence that supports the conclusion that Defendants have no liability and retained experts who also support such conclusions.

The Parties also strongly disagree on the proper measure of damages under ERISA in this matter. The measure of damages advocated by the Parties varies widely, from zero damages to significant dollars. The Parties have exchanged various letters and position papers supporting their differing view of what proper measure of damages should be applied by the Court.

These fact intensive inquiries would have been resolved through a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day and be considered determinant. Likewise, there was uncertainty about the measure of damages that the Court would apply in this case under ERISA.

> ## 4. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation

Out of the $16 million to be paid by BTC, approximately $8 million is from an insurance policy. BTC's insurance policy provides for the cost of defending this action, and originally provided for $10 million in coverage. If this lawsuit were to continue, the defense costs for BTC would continue to increase, depleting the insurance proceeds that would be available to the Class. Any amount recovered by the Class that exceeded the insurance left at judgment would require BTC to pay that excess out of its own funds, which could place BTC at a financial hardship depending on the amount. Indeed, Class Counsel were deeply concerned that a judgment for the full amount of Plaintiff's claimed damages, approximately $146 million, could cause BTC to seek bankruptcy protection,

resulting in little or no recovery for the Class after the dissipation of insurance to cover defense costs. Similar concerns exist with respect to Individual Defendants, who are paying more than half of their contribution from personal assets (and approximately $1.8 million from an insurance policy). A judgment against the Individual Defendants likely would have bankrupted them and left nothing for the Class. For these reasons, the immediate recovery of $19.8 million outweighs the mere possibility of future relief, especially when considering the diminishing insurance policy funds available to BTC and the Individual Defendants.

### 5.    The Settlement is fair and reasonable

The Settlement Agreement offers cash compensation in the aggregate amount of $19.8 million, with the net amount (after payment of such attorney's fees and costs, including notice and related costs, and Plaintiffs' Case Contribution Awards as may be allowed by the Court) guaranteed to be paid to the Class Members. There will be no claims-made process and no reversion of any part of the Settlement Funds to Defendants.

It is anticipated that the Independent Fiduciary shall determine the amounts payable to each Class Member under the terms of the MV ESOP and in proportion to the company shares that he or she held in the MV ESOP. There are approximately 460 ESOP participants, and it is anticipated that the Class Members will be paid an average of at least approximately $30,000.00 each.

It is well settled that a proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("This court has aptly held that it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged

19

against a hypothetical or speculative measure of what might have been achieved by the negotiators."); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'").

A class settlement need not recover the maximum damages that would be provable after establishing liability at trial, and the recovery of a fraction of that amount is reasonable particularly in a complex and risky case such as the one at bar. Indeed, even recoveries representing a very small percentage of the defendant's maximum exposure may be found to be fair, adequate and reasonable. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla.1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003).

Under the circumstances presented in the Action, where the Class face numerous opportunities for defeat, including summary judgment, trial, and appeal, not to mention the years of delay should this Action proceed through an appeal, the Settlement

Agreement for which the Parties seek this Court's approval represents the best realistic recovery for all members of the Settlement Classes, and it is well within the range of possible approval.

These were the considerations taken into account by the Parties in negotiating and evaluating the fairness of the Settlement and Plaintiff's Counsel's determination that entering into the Settlement is in the best interests of the Class. Plaintiff firmly believe that the Settlement represents a reasonable compromise given the risks, delay and expense of pursuing the litigation on the merits, including a probable appeal of any judgment in favor of the Class. The immediacy of the recovery and the guarantee that all members of the Class will recover argue for approval of the Settlement Agreement.

**C.     The Court should approve the form and manner of Class Notice and direct that notice be provided to the Class Members in accordance with the Settlement Agreement and should issue the requested ancillary orders necessary to establish a final approval process.**

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement provides for notice to the Settlement Class, and an opportunity for Class Members to object to approval of the Settlement and to Class Counsel's fee petition. (Settlement Agreement ¶¶ 2.1.3, 2.1.4, 2.1.5; *See* Exhibit C to the Settlement Agreement.) The Parties have agreed, subject to Court approval, to a notice plan, which calls for individual mailed notice or emailed notice that will provide Class Members with sufficient information to make an informed decision about whether to object to the proposed Settlement. (*See* Exhibit C to Settlement Agreement.) The notice informs Class Members of the nature of the action, the litigation background and the terms of the agreement, including the definition of the Class, the relief provided by the Settlement Agreement, the intent of Class Counsel to seek fees and costs, the Case Contribution Awards payable to Plaintiff, the scope of the release and binding nature of the Settlement on

Class Members, and the uncertain nature of litigation. In addition, the Notice informs the Class Members that additional documents, including the Settlement Agreement, and Plaintiffs' Motion for Award of Attorneys' Fees will be available via a website established and maintained by the Settlement Administrator.. The Notice also describes the procedure for objecting to the Settlement and states the date, time and place of the final approval hearing. *Id.* This notice and the manner in which it will be disseminated to Settlement Class Members satisfy Rule 23(e)(1) and constitutional due process concerns and should be approved.

Finally, the Court should approve Plaintiffs' Counsel's proposed Settlement Administrator, Escrow Agent, Independent Fiduciary, and Successor Trustee, respectively, KCC LLC (Settlement Administrator and Escrow Agent), Fiduciary Counselors Inc., and Huntington National Bank. The Court should schedule a fairness hearing and hearing on Plaintiffs' motion of an award of reasonable attorney's fees and Case Contribution Award to Plaintiff, as set forth in the proposed Preliminary Approval Order. Such orders are necessary to establish a reasonable and efficient process for disseminating notice, providing the opportunity for Settlement Class Members to object to approval of the Settlement, and considering final approval of the Settlement.

## VI.    CONCLUSION

As set forth above, the proposed settlement meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully request that the Court issue an Order: (1) granting preliminary approval of the Settlement; (2) enjoining the Class Members from pursuing claims that arise out of, or relate in any way to, the claims at issue in this action pending final approval of the settlement; (3) directing notice to Class Members and approving the plan and form of notice; (4) appointing KCC LLC as Settlement Administrator; (5) appointing KCC LLC as Escrow Agent; (6) appointing Fiduciary Counselors Inc. as Independent Fiduciary; (7)

appointing Huntington National Bank as Successor Trustee; (8) scheduling a Fairness Hearing;

(9) scheduling a hearing on Plaintiff Counsel's motion for fees and costs and the payment of a

Case Contribution Award to Plaintiff; and (10) amending the Class definition.

DATED this 15th day of November, 2016.

/s/ Gregory Y. Porter
Gregory Y. Porter
James L. Kauffman
BAILEY & GLASSER LLP
1054 31st Street, NW, Suite 230
Washington, D.C. 20007

James E. Magleby
Jennifer Fraser Parrish
MAGLEBY CATAXINOS & GREENWOOD
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of November, 2016, a copy of the foregoing was

filed electronically. Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system. Parties may access this filing through the Court's system.

/s/ Gregory Y. Porter
Gregory Y. Porter, *pro hac vice*